UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

TODTMAN, NACHAMIE, SPIZZ & JOHNS,
P.C.,

                      Plaintiff,

          -against-

RAUF ASHRAF, and EMPYREAN
INVESTMENT FUND, L.P.,

               Defendants.

-------------------------------------------------------------- x

05 Civ. 10098 (CSH)

MEMORANDUM OPINION
AND ORDER

HAIGHT, Senior District Judge:

       Plaintiff Todtman, Nachamie, Spizz & Johns, P.C., a law firm, sues to recover its fees for legal services rendered to defendants Rauf Ashraf and Empyrean Investment Fund, L.P. ("Empyrean"). After the defendants failed to answer or otherwise move with respect to the complaint, the Clerk of the Court entered the defendants' default pursuant to Federal Rule of Civil Procedure 55(a). Plaintiff has moved for this Court to enter a default judgment under Rule 55(b)(2), while defendants move to set aside the entry of default under Rule 55(c).

       For the reasons set forth below, defendants' motion to vacate the entry of default is denied, and plaintiff's motion for a default judgment will be granted. An Order of Reference to a Magistrate Judge will be made to determine the amount of plaintiff's "third party costs," should plaintiff seek to recover those costs.

## I. BACKGROUND

       The underlying fee dispute relates to plaintiff's prior representation of the defendants in an adversary proceeding, *In re MarketXT Holdings Corp.*, Case No. 04-12078 (ALG); *Nisselson v. Empyrean Inv. Fund, L.P.*, Adv. No. 05-01268 (ALG), pending in the United States Bankruptcy

Court for the Southern District of New York.  On August 12, 2005, the plaintiff withdrew from representing the defendants in the adversary proceeding and new counsel for the defendants was substituted in plaintiff's place.

On or about September 6, 2005, plaintiff provided defendants with a statement of account for legal services previously rendered in the amount of $154,890.22.  In their submissions on the present motions, defendants do not deny having received that statement.  They did not object to the amount, but did not pay it.  On November 30, 2005, plaintiff filed its complaint in this action, alleging causes of action for breach of contract, account stated, and *quantum meruit*, and seeking damages of $154,890.22 (the amount of the unpaid statement of account) plus interest, " third-party costs," and attorneys' fees, costs, and disbursements of the action.  Summons was issued by the Clerk of the Court on that date.

Ashraf resides in Brookline, Massachusetts.  Plaintiff retained a process server to effect service of the summons and complaint upon the defendants.  The process server's affidavit states that he effected service by affixing copies of the summons and complaint to the door of Ashraf's residence in Brookline on February 17, 2006 and by mailing copies to that address on February 24, 2006.[1]  Defendants do not deny having been served.  They did not answer the complaint or appear in the action.  On July 19, 2006, and again on August 16, 2006, plaintiff filed identical notices of a motion under Rule 55 for an order granting a default judgment against defendants for the relief prayed for in the complaint.  Plaintiff did not accompany those motions with a certificate that the Clerk had entered defendants' default pursuant to Rule 55(a).  Plaintiff remedied that defect by

---

[1] Service was properly effectuated upon Empyrean through these measures because Ashraf was an authorized agent of the partnership.

2

obtaining from the Clerk a certificate, dated September 15, 2006 and filed on September 25, 2006, which recited service upon the defendants as described above and noted their default.

Plaintiff's motion for a judgment by default lies under Rule 55(b)(2).  On September 19, 2006 and October 4, 2006, Ashraf wrote *pro se* letters to the Court, requesting additional time to retain counsel and respond to plaintiff's submissions.  On December 8, 2006, defendants—now represented by present counsel—filed a motion under Rule 55(c) to set aside the default.  This Opinion resolves both motions.[2]

## II.  DISCUSSION

### A.     Standard of Review

Rule 55(a) provides that a plaintiff may request the Clerk of the Court to enter default against a defendant who "has failed to plead or otherwise defend as provided by these rules."  Following entry of default, the plaintiff may then obtain a judgment by default pursuant to Rule 55(b).  If the plaintiff's claim is for a sum certain, and the defendant has not appeared, the Clerk of the Court can enter a judgment.  Fed. R. Civ. P. 55(b)(1).  Alternatively, a default judgment can be entered by the Court.  Fed. R. Civ. P. 55(b)(2).  If necessary, the Court can direct that a hearing be held, usually conducted by a Magistrate Judge and called an "inquest," to determine the amount of damages, before entering judgment for that amount pursuant to Rule 55(b)(2).

---

[2] The Court previously raised the question of whether diversity jurisdiction had been adequately established in this case, and directed Ashraf to submit an affidavit setting forth information about where the defendants were domiciled.  *See* October 4, 2006 Memorandum Opinion and Order; February 9, 2007 Order.  Ashraf's belatedly submitted affidavit states that at the time the action was commenced he did not maintain a residence in any state other than Massachusetts, and that he is the only partner in co-defendant Empyrean.  Ashraf Affidavit, verified February 23, 2007 ("Ashraf Aff."), ¶¶1-3.  These assertions are sufficient to establish this Court's subject matter jurisdiction based upon diversity of citizenship.

Rule 55(c) provides than an entry of default may be set aside "for good cause shown."  In assessing "good cause," courts must consider the following factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented."  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).[3] The court must weigh and balance each of the relevant factors in making its determination.  *See id.* at 97; *Info. Sys. & Networks Corp. v. United States*, 994 F.2d 792, 796 (Fed. Cir. 1993).

Rule 55(c) determinations are left to the sound discretion of the district court.  *Enron*, 10 F.3d at 95.  However, there is a preference for resolving disputes on the merits, and doubts should generally be resolved in favor of the defaulting party.  *Id.* at 96.

**B.**     **Analysis of "Good Cause" Factors**

**1.**     **Willfulness of Default**

The Second Circuit has interpreted willfulness in the default judgment context "to refer to conduct that is more than merely negligent or careless."  *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).  However, a default may be willful "where the conduct of counsel or the litigant was egregious and was not satisfactorily explained."  *Id.*  Thus, "[c]ourts have held the default to be willful when a defendant simply ignores a complaint without action."  *Brown v. DeFilippis*, 695 F. Supp. 1528, 1530 (S.D.N.Y. 1988) (citing *Marziliano v. Heckler*, 728 F.2d 151 (2d Cir. 1984)).

Here, plaintiff contends that the default was willful because the defendants purposely ignored the summons and complaint for over seven months after they were served.  Defendants offer several

---

[3] Courts may also consider other "relevant equitable factors" such as "whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result."  *Id.*

4

explanations for the delay, but these explanations are unconvincing.[4]

All Ashraf says in his affidavit relevant to the wilfullness of defendants' default is that: "I was unaware of my legal obligations and misunderstood them in light of the several different actions that were pending in the federal courts.  After this lawsuit was filed by plaintiff (my former attorneys), I was attempting in good faith to reach a settlement with them."  Ashraf Aff., ¶5.  These assertions are patently insufficient.  While neither Ashraf nor Empyrean were represented by counsel in connection with the plaintiff firm's claim immediately following service of the complaint, *pro se* status does not excuse the defendants' complete failure to respond to the complaint for seven months (February to September 2006), and only then after plaintiff moved for judgment by default. Parties appearing *pro se* should be given some leeway in meeting procedural rules due to their lack of legal knowledge, *Enron*, 10 F.3d at 96, but a reasonable non-lawyer should have realized that *some* sort of response to the summons and complaint was necessary.[5]  Ashraf's assertion that he was "unaware of [his] legal obligations and misunderstood them in light of the several different actions that were pending in the federal courts" suggests that Ashraf did not properly respond to the

---

[4] Initially, those explanations were contained in a brief submitted in support of the present motion by defendants' present counsel, which purported to describe the conduct and mental thought processes of the individual defendant, Ashraf.  That brief was not accompanied by any affidavit from Ashraf, and I disregard the factual assertions it contains.  A brief of counsel, who lacks any personal knowledge of the truth of such assertions, has no evidentiary value.  However, Ashraf has subsequently submitted his own affidavit, verified on February 23, 2007, and while the submission is belated, I will consider its contents.

[5] The Summons states: "You [defendants] are hereby summoned and required to serve on plaintiff's attorney . . . an answer to the complaint which is served on you with this summons, within 20 days after service of this summons to you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service."  Goldstein Decl., Ex. 1.

summons and complaint because he mistakenly believed those documents related to another case. But that explanation is undermined by Ashraf's subsequent assertion that "[a]fter this lawsuit was filed by plaintiff (my former attorneys), I was attempting in good faith to reach a settlement with them," which indicates Ashraf's awareness of "this lawsuit" (as distinct from other pending actions). Furthermore, plaintiff presents credible evidence that, before the default motion was instituted, an attorney purporting to represent Ashraf in this action contacted plaintiff and requested an adjournment of time to answer or move in response to the complaint. *See* Hoffman Decl., ¶¶2-4. This evidence suggests that Ashraf contacted a lawyer about this case and knew about defendants' legal obligation to respond to the complaint.

With regard to whatever unsuccessful settlement overtures Ashraf made, some courts have held that "a good faith belief that an action will settle constitutes a reasonable basis for failing to interpose an answer." *State Street Bank & Trust Co. v. Inversionuris Errazuriz Limitada*, 246 F. Supp. 2d 231, 250 (S.D.N.Y. 2002) (citing *Gonzalez v. City of New York*, 104 F. Supp. 2d 193, 196 (S.D.N.Y. 2000) ("defendant's counsel held the reasonable belief that the action would be settled, thereby obviating the need for a formal response")). *But see Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co.*, 288 F. Supp. 2d 22, 28 n.4 (D.D.C. 2003) (noting that the *Gonzalez* holding "does not represent the majority view"). However, Ashraf's affidavit fails entirely to demonstrate that at any time he had a good faith or reasonable belief that the case would actually settle so as to justify defendants' failure to respond to the summons and complaint.

For these reasons, I conclude that defendants' default was willful because they ignored the summons and complaint for over seven months without satisfactory explanation.

6

### 2.      Prejudice to Plaintiff

In the default judgment context, the Second Circuit has held that "delay alone is not a sufficient basis for establishing prejudice." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). "Rather, it must be shown that delay will 'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Id.* (quoting 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil*, § 2699 at 536-37 (1983)).

In the case at bar, delay from setting aside the entry of default would not cause loss of evidence or create discovery difficulties, but could provide greater opportunity for fraud.  Plaintiff points out that the court in the adversary proceeding found that defendants had wrongfully diverted $6.7 million in violation of a temporary restraining order, and that defendants were held in contempt of court.  *See* Goldstein Decl., ¶7.  Thus, plaintiff has a legitimate concern that increased delay will allow defendants to divert funds and preclude plaintiff from successfully enforcing a judgment against the defendants in the future.  I conclude that setting aside the default may cause prejudice to the plaintiff.

### 3.      Meritorious Defense

To show a meritorious defense, "the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) (citations and quotations omitted).

The determination of whether the defendants at bar have shown a meritorious defense necessarily begins with a consideration of plaintiff's claims.  The plaintiff law firm, suing to recover unpaid legal fees, alleges three causes of action in its complaint: breach of contract, account stated, and *quantum meruit*.  Under the governing New York law, "[i]t is well-settled that the receipt and

retention of an invoice without objection within a reasonable period of time may give rise to an account stated claim." *Morgan, Lewis & Bockius LLP v. IBuyDigital.com, Inc.*, 14 Misc.3d 1224(A), 2007 WL 258305 (N.Y. Sup. Ct. Jan. 11, 2007), at *2 (citations omitted). *See also Ruskin, Moscou, Evans & Faltischek, P.C. v. FGH Realty Credit Corp.*, 644 N.Y.S.2d 206, 207 (1st Dep't 1996) ("Defendant's receipt and retention of the plaintiff law firm's invoices seeking payment for professional services rendered, without objection within a reasonable time, gave rise to an actionable account stated . . .").[6]

The complaint in this case adequately alleges the necessary elements of an account stated. The complaint alleges that the firm and defendants executed a written retainer agreement on May 13, 2005, Compl., ¶7; that pursuant to its terms plaintiff mailed billing statements to defendants on a monthly basis, ¶10; that on or about July 1, 2005 "plaintiff provided defendants with a statement of account, which reflected defendants' balance due through June 30, 2005 of $100,594.18," ¶23; that during July and August defendants made payments totaling $100,000, "leaving a balance due of $594.18," ¶24; that on or about August 4, 2005, plaintiff provided defendants with a statement of account with a balance due through July 31, 2005 of $164,289.96, ¶25; that defendants made a payment of $10,000 on August 11, 2005, ¶26; that on or about September 6, 2005 plaintiff provided defendants with a statement of account reflecting, after payments and credits, an outstanding balance though August 31, 2005 of $154,890.22, ¶27; and that "[d]efendants retained this statement without objection," ¶28.   These allegations establish a claim for an account stated in the amount of $154,890.22.

---

[6] *Morgan, Lewis* and *Ruskin, Moscou* demonstrate that a claim for account stated is available to a law firm seeking to recover its fees.

Defendants do not raise any defenses to the account stated claim.  Ashraf's affidavit neither denies that he received the plaintiff's invoices nor avers that he objected to them before plaintiff initiated this action.[7]   Thus, the essential elements of plaintiff's account stated claim remain uncontested.  While Ashraf's affidavit contains some complaints about the plaintiff firm's handling of the case and the amount of its invoices, these complaints come too late—the defendants having received and retained plaintiff's invoices without objecting to them within a reasonable time.

In order to demonstrate a meritorious defense sufficient to reopen a default, a defendant must make more of a showing than the defendants at bar even attempt.  *See, e.g., Sony Corp. v. Elm State Elecs. Inc.*, 800 F.2d 317, 320 (2d Cir. 1986) ("Although in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its general denials with some underlying facts.").  The defendants at bar offer no facts whatsoever to challenge plaintiff's claim for an account stated.

Because I have concluded that defendants fail to show that they have a meritorious defense to plaintiff's claim for an account stated,  I do not need to consider the other causes of action pleaded in the complaint.

Ashraf's affidavit refers to a possible counter-claim.  He states: "I am also contemplating filing counter-claims against plaintiff because plaintiff compromised our ability to successfully defend ourselves in the related proceedings and forc[ed] us to hire another counsel at the last minute, further jeopardizing our position."  Ashraf Aff., ¶8.  But these claims are conclusory and without

---

[7] Ashraf's affidavit says only that "[*a*]*fter* this lawsuit was filed by plaintiff" he attempted to settle the claim, Ashraf Aff., ¶5 (emphasis added), which supports the inference that between September 6, 2005, the date of the last invoice, and November 30, 2005, the date of the complaint, Ashraf and Empyrean retained the invoice and made no objection to it; objections were voiced only after plaintiff filed suit.

9

sufficient specificity or factual support.  Furthermore, plaintiff's withdrawal was permitted by order

of the bankruptcy court and consented to by defendants.  *See* Stipulation and Order for Substitution

of Counsel, Goldstein Decl., Ex. 3.  There is nothing in Ashraf's suggestion of a counter-claim to

change the conclusion that  the defendants have failed to present a meritorious defense.

## C.    Default Judgment

Having considered the relevant factors, I conclude that defendants' default was willful, that

plaintiff may be prejudiced if the default is set aside, and that the defendants have failed to present

a meritorious defense.  In short, defendants have failed to show "good cause" under Rule 55(c) to

vacate the entry of default.

While default judgments are generally disfavored, such a result is entirely appropriate in this

case.  The Second Circuit has noted that: "Default procedures, of course, provide a useful remedy

when a litigant is confronted by an obstructionist adversary. Under such circumstances those

procedural rules play a constructive role in maintaining the orderly and efficient administration of

justice."  *Enron*, 10 F.3d at 96.  These considerations justify the entry of a default judgment here.

## D.    Prejudgment Interest

The plaintiff firm is entitled to prejudgment interest.  "In a diversity case, prejudgment

interest is controlled by the rule of the jurisdiction whose law determines liability." *Aniero Concrete

Co. v. New York City Constr. Auth.*, 308 F. Supp. 2d 164, 211 (S.D.N.Y. 2003) (citation and internal

quotation marks omitted).  In this case that jurisdiction is New York.  N.Y. C.P.L.R. § 5001(a)

provides that "[i]nterest shall be recovered upon a sum awarded because of breach of a performance

of a contract," § 5001(b) provides that "[i]nterest shall be computed from the earliest ascertainable

date the cause of action existed," and § 5004 provides that "[i]nterest shall be at the rate of nine per

centum per annum, except where otherwise provided by statute."

Because an account stated claim is essentially a type of breach of contract, the C.P.L.R. mandates both the award of prejudgment interest and its rate.  Accordingly the judgment to be entered will provide for interest at the rate of 9% per year, non-compounded, from the date of the plaintiff's unpaid invoice.  *See D. Mormando Roll Off Container, Inc. v. A.F.C. Enters., Inc.*, 628 N.Y.S.2d 528, 529 (2d Dep't 1995) ("[P]rejudgment interest was properly calculated from the date of the unpaid invoices.") (applying C.P.L.R. § 5001(b) to an account stated claim).  Post-judgment interest, also mandatory, will be governed by 28 U.S.C. § 1961.

**E.   Form of the Judgment**

The letter of engagement dated May 11, 2005 was between the plaintiff firm on the one hand, and Empyrean (and other corporate entities) and Ashraf individually on the other.  Accordingly, the judgment to be entered will be against Empyrean and Ashraf, jointly and severally.

**F.   Plaintiff's Claim for Attorney's Fees**

Plaintiff says that it should be awarded its attorney's fees and expenses against defendants and their present counsel incurred in connection with opposing defendants' motion to reopen the default, citing in that regard 28 U.S.C. § 1927.   Plaintiff bases this claim upon a statement in the brief of defendants' present counsel that Ashraf "would never have executed the retainer agreement and agreed to the terms stated therein."   Def. Br. at 6.  Plaintiff characterizes this statement as "shocking and sanctionable," Pl. Opp. Br. at 10, because the letter of engagement in evidence on the motion appears to have been signed by Ashraf on behalf of the corporate entities and on behalf of

Ashraf individually.[8]   In addition, Arthur Goldstein, a partner of the Todtman firm, swears in his declaration that Ashraf "signed the retainer in my presence on behalf of himself and Empyrean." Goldstein Decl., ¶14.

While there are differences between the signatures on the letter of engagement and the two known exemplars of Ashraf's signature in other documents that were submitted to the Court,[9] Ashraf's affidavit does not claim that the letter signatures are forgeries, and Goldstein's declaration is nowhere controverted.  Accordingly, I find on this record that the quoted statement in defendants' brief is false; and that counsel were either misled by Ashraf or did not conduct a sufficient inquiry before making the assertion.

Nonetheless, an award of attorney's fees does not lie under § 1927.  That statute provides that an "attorney or other person admitted to conduct cases" in a federal court "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  The statute would support a sanction only against counsel and not against Ashraf; and such a sanction is not justified under the present circumstances.  In *Bowler v. U.S. Immigration & Naturalization Serv.*, 901 F. Supp. 597 (S.D.N.Y. 1995), District Judge Sotomayor (as she then was) observed that "the purpose of § 1927 is to deter unnecessary delays in litigation," that "[u]nlike Rule 11 sanctions which focus on particular papers, the inquiry under § 1927 is on a course of conduct," and that "[b]ad faith is the touchstone of an award under this

---

[8] The retainer agreement includes signatures above signature lines for "Rauf M. Ashraf, Authorized Agent" and "Rauf M. Ashraf, Individually."  *See* Goldstein Decl., Ex. 2.

[9] *See* Letter from Ashraf to the Court, dated October 4, 2006; Ashraf Aff.

statute." *Id.* at 604-05.  Plaintiff has not demonstrated that the false factual assertion in defendants'

brief was a bad faith attempt by defendants' present counsel to complicate the proceedings and delay

the litigation.  The plaintiff at bar does not invoke Rule 11.

## G.    Further Proceedings

For the reasons stated, plaintiff is entitled on this record to a judgment in its favor for the

amount of the unpaid fees stated in its invoice, $154,890.22, with prejudgment interest.  But plaintiff

also claims "all third-party costs in an amount to be determined at a trial of this matter."  Compl.,

¶21.  "Third-party costs" is a phrase derived from the letter of engagement, which states at page 3

that they include "without limitation, filing fees, fees of accountants, expenses of delivery, after-hour

word processing, copying and similar service."  Goldstein Decl., Ex. 2.  The precise amounts

incurred cannot be gleaned from the present record.  If plaintiff wishes to press these costs so that

the amount can be included in the judgment, I will make an Order of Reference to a Magistrate Judge

with a direction to conduct a limited inquest.

## III. CONCLUSION

For the foregoing reasons, defendants' motion to vacate the entry of default pursuant to Rule

55(c) is denied, and plaintiff's motion for the entry of a judgment by default pursuant to Rule

55(b)(2) will be granted.

If plaintiff is content to forgo any claim for "third-party costs," as that phrase is used in the

complaint, plaintiff may settle a Judgment consistent with this Opinion on ten (10) calendar days'

notice.  The Notice of Settlement must be filed and served not later than March 19, 2007.  If plaintiff

desires to press its claim for third-party costs, it must so advise the Court by letter, with copy to

defendants' counsel, and the Court will make an Order of Reference to a Magistrate Judge.

It is SO ORDERED.

Dated:  New York, New York
        March 7, 2007

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

14